1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| KAREEM MUHAMMAD, | ) Case No.: 1:12-cv-01199 - JLT |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
| CHAD GARRETT, et al., | ) (Doc. 95) |
| Defendant. | ) |

11 KAREEM MUHAMMAD,

12              Plaintiff,

13      v.

14 CHAD GARRETT, et al.,

15              Defendant.

16

17        In this action, Plaintiff claims he suffered excessive force during an arrest. In the current

18 motion, Defendants argue they are entitled to a grant of summary judgment because Plaintiff's entire

19 complaint is barred.  (Doc. 95)  The evidence demonstrates that Plaintiff has suffered convictions of

20 crimes that, if he was successful in the current action, would be undermined. Because he is not

21 permitted to pursue this action without first demonstrating the criminal convictions have been set aside

22 through direct attack, Defendants' motion for summary judgment, the motion is **GRANTED**.

23 **I.      Factual Background**

24        On February 26, 2012, Kareem Muhammad suffered a broken arm during a scuffle with police

25 officers.  As a result of the incident, he was charged with being under the influence of a controlled

26 substance in violation of California's Health & Safety section 11550(A), resisting, obstructing or

27 delaying a peace officer in the performance of his duties in violation of Penal Code section 148(A) and

28 assault on a peace officer in violation of Penal Code section 241(c).  (Doc. 95-3 at 2 (Fact 1); Doc. 95-3

at 6; (Fact 7))

During his criminal trial, Kareem Muhammad testified.  (Doc. 95-3 at 5-6 (Fact 6[1])   He told the jury he was confronted by people at a motel room he was renting.  Id. Because he felt threatened by the people, he left the room. Id.  Sometime later, he went to the hospital because he thought someone had tampered with his drink.  Id.   Nevertheless, he left the hospital in search of a taxi near an AM/PM convenience store.  Id.  As he walked near the store, he heard a shout and tripped on a curb.  Id.  As he lay on the concrete, a police officer approached and told him to continue to lie on the ground.  Id.  As he did so, the officer walked up and struck him on the arm and broke his bone.  Id.  Then officers dragged him toward the ambulance and scraped his chin.  Id.  Plaintiff denied ever having used methamphetamine or cocaine.  Id.

The officers involved in the incident testified as well.  Officer Garrett testified that he saw Plaintiff leaving the service station and that he appeared unsteady, was "high-stepping," and appeared to be hallucinating.  (Doc. 95-3 at 2 (Fact 2))  Officer Garrett observed that Plaintiff's muscles were rigid.  Id.

Garrett testified that he approached Plaintiff and asked him to sit down but Plaintiff ignored him and continued walking. (Doc. 95-3 at 2 (Fact 2))  Garrett followed behind and ordered Plaintiff to sit down several times and, ultimately, Plaintiff sat.  Id.  During this time, Plaintiff appeared "fidgety" and was unable to sit still.  Id.  Garrett determined that Plaintiff was under the influence of drugs and decided to arrest him and attempted to place him in handcuffs.  Id.  When Garrett reached for Plaintiff's hands, Plaintiff tried to stand.  Id.  Garrett tried to prevent Plaintiff from standing by ordering him to remain seated, by grabbing his wrist and by pushing down on his shoulder.  Id.  Nevertheless, Plaintiff stood up, broke free and began running.  Id. Garrett ran after Plaintiff and yelled orders for him to stop. Id.

---

[1] Plaintiff does not dispute any of Defendants' undisputed material facts, though, seemingly, he argues that the testimony of the officers given at the criminal trial and relied upon in Facts 2 and 3, was not worthy of belief.  However, here the Court is not authorized to judge the credibility of the witness and, instead, is bound by the jury's determination that the officer's accounts were sufficient to demonstrate Plaintiff had committed the charged crimes.  In any event, Plaintiff's claims related to the believability of the trial testimony fails to demonstrate a genuine dispute.  Plaintiff recognizes this given the fact that before each response to Facts 1-5, Plaintiff notes, "Undisputed" and then notes, "6,7,8,9,10,11,12, and 13 are Undisputed." (Doc. 99 at 10-15)  Thus, the Court accepts these facts as true for purposes of this motion.

Given Garrett's call for assistance, Officers Messick and Gavin arrived. (Doc. 95-3 at 3-5 (Facts 2-4) Messick testified that he and Gavin arrived at the scene together. (Doc. 95-3 at 3-4 (Fact 3) Messick saw Plaintiff running directly at him and Gavin. Id. Messick testified that Gavin got out of the patrol car and ordered Plaintiff to stop but he did not. Id. Messick gave chase and also ordered Plaintiff to stop but he did not. Id. Eventually, Messick reached Plaintiff and grabbed at his shoulders to try to stop him. Id. In response, Plaintiff turned toward him and swung a fist at Messick's face. Id. Messick dodged the blow and shoved Plaintiff. Id. This allowed Messick to get on Plaintiff's back and use his body weight to force Plaintiff to the ground. Id. Despite this, Plaintiff pushed up—in a push-up position—with Messick on his back in an attempt to throw Messick off. Id.

By this time, Gavin reached Messick and he too placed his body weight onto Plaintiff's back. (Doc. 95-3 at 3-4 (Fact 3)) Garrett then reached the group and used his body weight to try to stop Plaintiff from kicking. Id. Nevertheless, despite all three officers on Plaintiff's back, he continued to flail and was able to push up and off the ground. Id. (Doc. 95-3 at 5 (Fact 4) Gavin punched Plaintiff in the rib cage in an effort to try to obtain control over Plaintiff's arm. Id. Given the continued level of resistance, Messick struck Plaintiff twice on the arm with his baton. (Doc. 95-3 at 3-4 (Fact 3)) Despite this, Plaintiff continued struggling and during which the officers heard a snapping sound which, it appears, was the sound of Plaintiff's arm bone breaking. (Doc. 95-3 at 3-5 (Facts 2-4) Still, Plaintiff continued to use the arm in an attempt to break free. Id. Eventually, the officers were able to place Plaintiff in handcuffs. Id.

At the trial, a criminologist testified that Plaintiff's blood, taken at the time of the incident and which was tested at the lab, was positive for methamphetamine at one of the highest levels he had seen. (Doc. 95-3 at 5 (Fact 5))

As to the Penal Code 148(A) charge, the court instructed the jury,

> The defendant is charged in count 2 with resisting, obstructing or delaying a peace officer in the performance or attempted performance of his duties in violation of Penal Code section 148(A).
> To prove that the defendant is guilty of this crime the People must prove that number one, **Christopher Messick, Chad Garret, and Keegan Gavin were peace officers lawfully performing or attempting to perform their duties as a peace officer.**
> Number two, **the defendant willfully resisted**, obstructed, or delayed Christopher Messick, Chad Garrett, and/or Keegan Gavin or in the performance or attempted performance of those duties.

3

And number three, when the defendant acted, he knew or reasonably should have known that **Christopher Messick, Chad Garrett, and Keegan Gavin were peace officers performing or attempting to perform their duties**.

Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else or gain an advantage. A person who is employed as a police officer by the Bakersfield Police Department is a peace officer.

The People allege that the defendant resisted, obstructed, or delayed Christopher Messick, Chad Garrett or Keegan Gavin by doing the following:

Failing to follow the instructions of the officers;

Running away from the officers;

Physically struggling when the officers attempted to handcuff the defendant; and

Attempting to run after being unhandcuffed.

You may not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of the alleged acts of resisting, obstructing or delaying a peace officer who was lawfully performing his duties and you all agree on which act he committed.

The People have the burden of proving beyond a reasonable doubt that **Christopher Messick, Chad Garrett, and Keegan Gavin were lawfully performing their duties as peace officers**. If the People have not met this burden, you must find the defendant not guilty of Penal Code sections 148 (A) (1) and 241 (C).

**A peace officer is not lawfully performing his duties if he is unlawfully arresting or detaining someone or using unreasonable or excessive force in his duties**. A peace officer may legally detain someone if the person consents to the detention or if specific facts known or apparent to the officer lead him to suspect that the person to be detained has been, is, or is about to be involved in activity relating to crime and a reasonable officer who knew the same facts would have the same suspicion. Any other detention is unlawful.

**In deciding whether the detention was lawful, consider evidence of the officer's training and experience and all the circumstances known by the officer when he or she detained the person. A peace officer may legally arrest someone if he has probable cause unlawful.**

Probable cause exists when the facts known to the arresting officer at the time of the arrest would persuade someone of reasonable caution that the person to be arrested has committed a crime. In deciding whether the arrest was lawful, consider evidence of the officers' training and experience and all the circumstances known by the officer when he arrested the person. In order for an officer lawfully to arrest someone without a warrant for a misdemeanor or infraction, the officer must have probable cause to believe that the person to be arrested committed a misdemeanor or infraction in the officer's presence.

Penal Code section 148(A) (1) is a misdemeanor.

Special rules control the use of force. A peace officer may use reasonable force to arrest or detain someone to prevent escape, to overcome resistance or in self-defense. If a peace officer uses unreasonable or excessive force while arresting or attempting to arrest or detaining or attempting to detain a person, that person may lawfully use reasonable force to defense himself.

A person being arrested uses reasonable force when he uses that degree of force that he actually believes is reasonably necessary to protect himself from the officer's use of unreasonable or excessive force and uses no more force than a reasonable person in the same situation would believe is necessary for his protection.

(Doc. 95-3 at 7-9 (Fact 9))  As to the charge related to assault on the peace officer brought under Penal Code section 241(c), the court charged the jury,

4

The defendant is charged in count 3 with assault on a peace officer in violation of Penal Code section 24l(C). To prove that the defendant is guilty of this crime, the People must prove that number one, the defendant did an act that by its nature would directly and probably result in the application of force to a person.

Number two, the defendant did that act willfully.

Number three, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act would directly, naturally, and probably result in the application of [sic] to someone.

Or [sic], when the defendant acted he had the present ability to apply force to a person.

Five, when the defendant acted, **the person assaulted was lawfully performing his duties as a peace officer**.

And number six, when the defendant acted, he knew or reasonably should have known that the person assaulted was a peace officer who was performing his duties.

And number seven, **the defendant did not act in self-defense**.

Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. The terms application of force and applied force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person including through his or her clothing is enough. The touching does not have to cause pain or injury of any kind. The touching can be done indirectly by causing an object to touch the other person.

The People are not required to prove that the defendant actually touched someone. The People are not required to prove that the defendant actually intended to use force against someone when he acted. No one needs to actually have been injured by the defendant's act. But if someone was injured, you may consider that fact along with all the other evidence in deciding whether the defendant committed an assault and, if so, what kind of assault it was. Voluntary intoxication is not a defense to assault.

A person employed as a police officer by the Bakersfield Police Department is a peace officer. A police officer is also performing the duties of a peace officer if he is in a police uniform.

(Doc. 95-3 at 9-10 (Fact 10), emphasis added)  After receiving these instructions and others, the jury deliberated and found Plaintiff guilty of all three charges.  (Doc. 95-3 at 11 (Facts 11-13))

## II.   Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a

motion for summary judgment and a motion for summary adjudication are the same.  See Fed. R. Civ.

P. 56 (a), (c); Mora v. Chem-Tronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  Id. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits.  Id. at 586 n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary

1  judgment, the Court can only consider admissible evidence.  Orr v. Bank of America, NT & SA, 285

2  F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854

3  F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the

4  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. Orr,

5  285 F.3d at 772; Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

6  **III.    The Fourth Amended Complaint**

7          Plaintiff lodged his fourth amended complaint on June 23, 2014 and it was ordered filed on

8  August 20, 2014. (Doc. 81)  This complaint raises claims under the Fourth Amendment for excessive

9  force and unlawful arrest, assault, battery, false imprisonment, intentional infliction of emotional

10  distress and civil rights violations under the Bane Act (Cal. Civ. Code 52.1).  Id. at 1, 4.

11         **A.       Plaintiff's Section 1983 Claims**

12         In part, Plaintiff's fourth amended complaint is based upon a claim brought under 42 U.S.C. §

13  1983 for violation of the Fourth Amendment. (Doc. 81)  Section 1983 "is a method for vindicating

14  federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In relevant part,

15  Section 1983 provides:

16         Every person who, under color of any statute, ordinance, regulation, custom, or usage,
           of any State or Territory... subjects, or causes to be subjected, any citizen of the United
17         States or other person within the jurisdiction thereof to the deprivation of any rights,
           privileges, or immunities secured by the Constitution and laws, shall be liable to the
18         party injured in an action at law, suit in equity, or other proper proceeding for redress...

19  42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a

20  constitutional right and (2) a person who committed the alleged violation acted under color of state law.

21  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

22         A plaintiff must allege a specific injury was suffered, and show causal relationship between the

23  defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A

24  person deprives another of a right "if he does an affirmative act, participates in another's affirmative

25  acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of

26  which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Here, Plaintiff asserts

27  Messick violated his rights arising under the Fourth Amendment to the United States Constitution by

28  using excessive force against him.

1

**B.      California Civil Code §§ 52.1 and 52[2].**

2

Plaintiff alleges that the defendants interfered with rights protected by the California

3

Constitution and the Constitution of the United States in violation of California Civil Code § 52.1,

4

known as the "Bane Act." (Doc. 81) The Bane Act provides a cause of action for interference "by

5

threats, intimidation, or coercion" or attempted interference, "with the exercise or enjoyment by any

6

individual or individuals of rights secured by the Constitution or laws of the United States, or of the

7

rights secured by the Constitution or laws of this state." Cal. Civ.Code § 52.1(a); <u>Venegas v. County of</u>

8

<u>Los Angeles</u>, 32 Cal.4th 820, 843 (2004) ("Civil Code section 52.1 does not extend to all ordinary tort

9

actions because its provisions are limited to threats, intimidation, or coercion that interferes with a

10

constitutional or statutory right ."). To prove a claim under 52.1, the plaintiff must demonstrate that the

11

interference with the constitutional right was accompanied by an act of coercion. <u>Jones v. Kmart</u>, 17

12

Cal.4th 329, 334 (1998) ("[S]ection 52.1 does require an attempted or completed act of interference

13

with a legal right, accompanied by a form of coercion.")

14

In <u>Bender v. County of Los Angeles</u>, 217 Cal.App.4th 968, 977–978, 159 Cal.Rptr.3d 204

15

(2013), the court held that where an arrest is unlawful and excessive force is used, a claim is stated

16

under California Civil Code section 52.1.  However, courts are divided as to whether excessive force

17

used while performing a lawful arrest implicate a violation of § 52.1.

18

<u>Bender</u> relied upon <u>Shoyoe v. County of Los Angeles</u>, 203 Cal.App.4th 947, 956 (2012),

19

which considered whether a Bane Act violation can be founded only on a constitutional violation

20

which, in and of itself, is inherently coercive. In rejecting that this is sufficient to state a claim under the

21

Bane Act, <u>Shoyoye</u> held, "[W]here coercion is inherent in the constitutional violation alleged ... the

22

statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing

23

of coercion independent from the coercion inherent in the wrongful detention itself." <u>Id</u>. at 959.

24

This Court has held similarly when it explained, "The text of the Bane Act ... indicates that a

25

_____

26

[2] In this context, California Civil Code § 52 merely provides the remedy for a violation of § 52.1; it does not apply to the

27

facts alleged except to supply the remedy.  Section 52.1 reads, "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his

28

or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, . . ."  Thus, if there is not a violation of 52.1, there can be no relief provided by § 52.

cause of action under the act requires a predicate—the application of threat, intimidation or coercion and an object—interference with a constitutional or statutory right." <u>Rodriguez v. City of Fresno</u>, 819 F.Supp.2d 937, 953 (E.D.Cal.2011). Thus, a plaintiff must demonstrate that a constitutional violation "occurred and that the violation was accompanied by threats, intimidation or coercion within the meaning of the statute." <u>Barsamian v. City of Kingsburg</u>, 597 F.Supp.2d 1054, 1057 (E.D.Cal.2009) (emphasis added). In evaluating the threatening or coercive conduct, the Court must consider "whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." <u>Richardson v. City of Antioch</u>, 722 F.Supp.2d 1133, 1147 (N.D.Cal.2010).

In <u>Rodriguez</u>, the officers purposefully shot at a person they claimed was a gang member and who was reaching for a gun. <u>Rodriguez</u>, 819 F.Supp.2d at 943.  However, in taking this action, Plaintiff was struck by a stray bullet. <u>Id</u>. Plaintiff asserted a number of claims including one brought under the Bane Act. <u>Id</u>. at 953. In granting summary judgment to the defendants, the Court concluded "that in order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right. It is not sufficient that the right interfered with is the right to be free of the force or threat of force that was applied." <u>Id</u>.

This Court is bound by the holding of <u>Shoyoye</u> because there is no "convincing evidence that the California Supreme Court would hold otherwise." <u>Carvalho v. Equifax Info. Services, LLC</u>, 629 F.3d 876, 889 (9th Cir.2010); see also <u>Alvarez v. Chevron Corp.</u>, 656 F.3d 925, 932 n. 7 (9th Cir.2011) (a decision of a California Court of Appeal on issue of state law is binding on a federal court "because there is no California Supreme Court decision on point, and no indication that the California Supreme Court would disagree" with the Court of Appeal). Moreover, the language of the Bane Act belies a finding that unconstitutional acts without separate threats of violence, violence or coercion could constitute a claim. Therefore, where the arrest was lawful, there must be evidence of a separate act of violence, threats of violence or coercion along with the constitutional violation to constitute a Bane Act claim.

### C.    Other state law claims

Plaintiff alleges he suffered an assault and battery.  Under California law, an assault occurs

when a person intended to cause a harmful or offensive contact, the plaintiff was placed in fear of a harmful or offensive touching, the injured party did not consent to the conduct and was harmed thereby. (Judicial Council Of California Civil Jury Instruction 1301)  "The tort of assault is complete when the anticipation of harm occurs." Kisesky v. Carpenters' Trust for Southern California, 144 Cal.App.3d 222, 232 (1983).  A battery by a peace officer occurs when the officer intentionally touches another and used unreasonable force to overcome resistance, the injured party did not consent to the use of force and the unreasonable use of force caused the party harm.  (Judicial Council Of California Civil Jury Instruction 1305)  However, a peace officer may use —or threaten to use—that degree of force needed to effect a lawful arrest or detention.  Id.

For liability for a false arrest/false imprisonment[3] to be imposed, evidence must demonstrate that Messick arrested Plaintiff without a warrant, the arrest cause him harm and the arrest was not supported by probable cause. Judicial Council Of California Civil Jury Instruction 1401.  Also, liability may be imposed for intentional infliction of emotional distress where the defendant's conduct was extreme and outrageous and intended to cause the plaintiff emotional distress and the plaintiff suffered severe emotional distress. Judicial Council Of California Civil Jury Instruction 1401. "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" Hughes v. Pair, 46 Cal.4th 1035, 1050-1051(2009).

### III.    Plaintiff's claims are barred by Heck v. Humphrey

When a complaint seeks damages in a § 1983 action and a judgment in the plaintiff's favor would necessarily imply the invalidity of the plaintiff's criminal conviction based acts upon which the § 1983 is premised, the action is barred unless the plaintiff demonstrates the conviction has been reversed.  Heck v. Humphrey, 512 U.S. 477, 486-487, 512 (1994).  "In evaluating whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) quoting Heck at 487 n. 6.

---

[3] "'[F]alse arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology." Collins v. City and County of San Francisco, 50 Cal.App.3d 671, 673 (1975).

1    Here, Plaintiff's complaint asserts that he was compliant at all times with the officers and that at

2    all times Messick's use of force was excessive to the circumstance.  (Doc. 81 at 2-3)  Moreover,

3    Plaintiff's testimony at his trial was consistent with his claims here.  He testified related to the incident

4    with the officers as follows:

5            At this time, I began a light jog towards an AMPM store. It's open 24 hours.
        Someone yelled. I looked back and at this time, there's a lawn and you have the
6        concrete, you know, that decorates the lawn. It's pretty high so I turned and looked and
        I tripped over it, fell over the grass, and landed on the concrete. And the officer
7        commanded me to stay on the concrete so I just stayed on the concrete and I didn't do
        any crime. I was the victim so I don't know why he wanted to arrest me so I stayed on
8        the ground, okay.  And he grabbed my arm and he wanted them back so I put them
        back and -- can I do a demonstration?
9            THE COURT: Sure.
             MR. MUHAMMAD: And I'm laying· on the concrete and he just took it back
10       like that and he just broke it -- like broke it, used all his force and broke it in the
        opposite direction which it wasn't meant to be.
11           THE COURT: Okay. Well, just try and describe this for the record. You've got
        your right arm behind you --
12           MR. MUHAMMAD: Behind me.
             THE COURT: -- straight behind and lifted up kind of towards your shoulder, is
13       that accurate?
             MR. MUHAMMAD: Yes, your Honor. As you can see, it can't go too far or it
14       should he pretty easy to break if it can barely go this far by nature. So he grabs the arm,
        puts it up, and just breaks it --violently breaks it. So he's like him and my arm are like
15       over there and the rest of my body is trying to stay where it's meant to be so be like
        broke my arm and  he just broke it and held me down.
16           Then, other officers came and they drag me and try to scrape my chin but I
        caught myself because I was aware so they did that and they placed me in an
17       ambulance and at this point, they just --it's as if someone just came, broke your arm,
        and threw you in a little box and they're standing over you like you're a warthog or
18       something so I don't know what was going on.
             MR. STARR: Objection. Relevance.
19           THE COURT: Overruled.
             MR. MUHAMMAD: So I didn't know what was going on and this never
20       happened to me before so they just violated me like that and I had no way of protecting
        myself because I was strapped down so I was strapped down and they're standing over
21       me in this little box and they just broke my arm for no reason. I was -- when you broke
        my arm, I repeatedly called out for help. However, no one was around. It was dark.
22           We have two one-way streets that are part of the freeway. However, no cars
        passed by. So, yeah, they just -- I was just violated. I didn't know what was going on so
23       -- but I was strapped down to the gurney but I didn't trust them and I didn't trust that
        they were taking me to the hospital. I was just violated and I just didn't know whatever
24       they were doing. So I would call for help and -- so we went to the hospital and when I
        got to the hospital, I just remember getting to the hospital and I was on the gurney and
25       that's all I remember.

26    (Doc. 95-4 at 35-38)  Plaintiff testified also that Garrick and Gavin were not at the scene and their

27    testimony claiming to have been there, were lies.  (RT Vol. 1 at p. 253-263)  Likewise, he testified that

28    Messick lied about how he learned of the call from the radio transmission by Garrick and that Messick

lied about how Plaintiff's arm was broken.  Id.

It is important to note, however, that the jury verdict necessarily means that it found that Messick was making a lawful detention and/or arrest, he had probable cause to detain and arrest Plaintiff, Messick was lawfully engaged in his duties as a peace officer, Messick did not use excessive force during the incident and Plaintiff did not act in self defense when he assaulted Messick. (Doc. 95-3 at 9-10 (Fact 10), emphasis added)

Moreover, Plaintiff claims that all of Officer Messick's acts of force occurred despite that Plaintiff was always compliant and never resisted.  In essence, Plaintiff alleges one continuous act of unlawfulness by Messick and one continuous act of lawfulness by the Plaintiff.  Plaintiff does not claim that the conviction for assault on a peace officer and resisting arrest was based upon acts of resistance and assaultive conduct that are separate from the arrest itself. Indeed, Plaintiff's excessive force allegations are based on the exact same acts that were considered by the jury in the criminal trial, and these facts are not divisible from the facts alleged in the fourth amended complaint.  Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (quoting Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)). "[A] criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'"]

There was no spatial or temporal distinction between the acts for which Plaintiff was convicted and the acts of Messick.  Smith, at 699.  Also, of keen importance is the fact that to find Plaintiff guilty of the charges, the jury specifically found that Messick was acting within the lawful scope of his duties and did not use excessive force during the incident.    (Cal. Pen Code § 148(A); Cal. Pen Code 241 (C))

This case is similar to Beets v. County of Los Angeles, 669 F.3d 1038, 1043 (9th Cir. 2012) in which an officer used deadly force when the suspect backed a pickup truck toward the officer.  The suspect's parents sued the officers and claimed that the officer used excessive force.  Id.  However, because the surviving suspect was convicted of aiding and abetting the decedent's assault on the defendant-officer and resisting arrest, the Court of Appeals determined that the § 1983 case was bared by Heck.  Id.  As in the case here, in Beets, there was one continuous act of criminal activity and no

12

claim that there was a period of compliance during which the force was used.  Id. The Beet Court

observed,

> It is uncontroverted that GPR and Morales fled from the authorities, physically resisted
> arrest when getting into the pickup truck, rammed one police car with the pickup truck,
> and then accelerated backward toward Deputy Winter. This is overwhelming evidence
> that they were resisting arrest by force and assaulting police officers. There may be
> some question as to whether, after Deputy Winter fired, the truck continued to move
> backward or moved forward toward the police car. There is also testimony that other
> officers fired at GPR. However, all agree that it was the shooting that brought an end to
> GPR's and Morales' criminal activity.

Id. at 1043-1044.  Beets relied upon Cunningham when it held,

> [T]here was no break between Cunningham's provocative act of firing on the police and
> the police response that he claims was excessive. Indeed, in convicting Cunningham of
> felony murder, the jury concluded that the police response was a natural consequence
> of Cunningham's provocative act. Because the two are so closely interrelated,
> Cunningham's conviction forecloses his excessive force claim against the SIS officers.

Beets at 1044 quoting Cunningham v. Gates, 312 F.3d 1148 (9th Cir.2002).

Plaintiff does not dispute that he was convicted of the instant offenses or the elements of these

offenses.  Instead, he argues that he has appealed his conviction and is seeking to have the jury's

determination reversed.  (Doc. 99 at 7)  He outlines errors he believes occurred at the trial and argues

that because the appeal remains pending, this case may go forward.  Id.  However, as Heck

demonstrates, this Court lacks the authority to evaluate errors which may have occurred at the trial.

Likewise, adopting Plaintiff's argument would turn Heck on its ear.  The fact that the appeal remains

pending means that this action is barred. "We think the hoary principle that civil tort actions are not

appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983

damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or

confinement, just as it has always applied to actions for malicious prosecution." Heck at 893-894.

Nevertheless, Defendants have requested judicial notice[4] of Plaintiff's appellate brief in which

the only issue raised relates to the trial court's refusal to suppress the evidence of the blood sample

taken from him.  (Doc. 101-1)  In his brief, the issue is framed as, "[W]hether or not appellant was so

---

[4] Defendants' request for judicial notice of the issues raised in the appeal of Plaintiff's criminal case (Doc. 101) is
**GRANTED**.  Likewise, Plaintiff's request for judicial notice (Doc. 100) of the docket in the criminal case is **GRANTED**.
Both requests involve information which can be "accurately and readily determined from sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201(b)(2).

1  mentally impaired that his consent to a blood draw was constitutionally invalid." Id. at 16.  Thus, if

2  Plaintiff is successful on his appeal, at most, his conviction for being under the influence of

3  methamphetamine is implicated.  As Plaintiff admitted at the hearing, his appeal does not challenge

4  the convictions related to resisting arrest and assault on a peace officer. The fact that Plaintiff intends

5  to file a habeas corpus petition to challenge the representation he received by the Public Defender does

6  not justify denying this motion or granting Plaintiff's oral motion to stay this matter.

7        On the other hand, the fact that Plaintiff believes his convictions are minor is insufficient[5] to

8  avoid the Heck bar.  The seriousness of the charge is not the issue; the issue is whether if he succeeds

9  in this action, the jury's verdict, necessarily, would be invalidated.  The Court concludes that it would.

10  Because the jury found Messick acted within his lawful authority to make the arrest/detention and did

11  not use excessive force, Plaintiff's § 1983 action is barred.

12        Likewise, Plaintiff's state law claims are barred by Heck.   In Yount v. City of Sacramento, 43

13  Cal. 4th 885, 902 (2008), the California Supreme Court extend the Heck bar to state causes of action.

14  The Court held,

> Heck, of course, is a rule of federal law that applies only to federal causes of action that
> challenge the validity of a state conviction. (Nuno v. County of San Bernardino, supra,
> 58 F.Supp.2d at p. 1130, fn. 3.) But we cannot think of a reason to distinguish between
> section 1983 and a state tort claim arising from the same alleged misconduct and, as
> stated above, the parties offer none . . . Indeed, Yount's common law battery cause of
> action, like his section 1983 claim, requires proof that Officer Shrum used unreasonable
> force. (Edson v. City of Anaheim (1998) 63 Cal.App.4th 1269, 1273–1274, 74
> Cal.Rptr.2d 614.)
>
> Moreover, this court has recently reiterated its concern about the use of civil suits to
> collaterally attack criminal judgments in the context of a convicted criminal defendant's
> civil action against his or her attorney for legal malpractice. (See Coscia v. McKenna &
> Cuneo (2001) 25 Cal.4th 1194, 1197, 108 Cal.Rptr.2d 471, 25 P.3d 670.) In holding
> that a criminal defendant must obtain exoneration by postconviction relief as a
> prerequisite to obtaining relief for the legal malpractice that led to that conviction, we
> recognized that our ruling would preclude recovery "even when ordinary collateral
> estoppel principles otherwise are not controlling, for example because a conviction was
> based upon a plea of guilty that would not be conclusive in a subsequent civil action

---

25       [5]The suggestion that his convictions for resisting arrest and assault on a peace officer are insignificant seems
directly at odds with the position he takes in this litigation.  In essence, he is saying that the unlawful force the jury found
26 he used on the officers is insignificant while, at the same time, saying that it is tremendously significant that the officer
used unlawful force on him.

27       In any event, the Court finds the fact that he was facing up to a year in jail if convicted of any one of the offenses,
was sufficient motivation for Plaintiff to fully defend against these charges.  Moreover, review of the transcript makes clear
28 that, indeed, he did defend against the claims that he failed to comply with the officers' orders or that he assaulted any of
the officers.

1  involving the same issues." (Id. at p. 1204, 108 Cal.Rptr.2d 471, 25 P.3d 670.) Our
2  justification for a bar of that scope included the promotion of judicial economy and the
   " ' "strong judicial policy" ' " recognized in Heck itself " ' "against the creation of two
3  conflicting resolutions arising out of the same or identical transaction." ' " (Coscia,
   supra, 25 Cal.4th at p. 1204, 108 Cal.Rptr.2d 471, 25 P.3d 670, quoting Heck, supra,
   512 U.S. at p. 484, 114 S.Ct. 2364.)

4

5  Therefore, for the reasons set forth above as to the § 1983 claim, the Court finds that Plaintiff's state

6  law claim under the Bane Act is barred by Heck.

7        In addition, the claims for assault and battery are barred because Messick was authorized

8  reasonable force to make the arrest. Yount, 43 Cal.4th at 898 ["Hence, to the extent that Yount's

9  section 1983 claim alleges that he offered no resistance, that he posed no reasonable threat of

10 obstruction to the officers, and that the officers had no justification to employ any force against him at

11 the time he was shot, the claim is inconsistent with his conviction for resisting the officers and is

12 barred under Heck. (Thore v. Howe (1st Cir.2006) 466 F.3d 173, 180 [claim that the plaintiff had not

13 committed an assault, and thus that the officer's use of force in response was excessive, was barred by

14 plaintiff's assault conviction]; Swiecicki v. Delgado (6th Cir.2006) 463 F.3d 489, 494–495; see

15 generally McCann v. Neilsen (7th Cir.2006) 466 F.3d 619, 621 ["a plaintiff's claim is Heck-barred

16 despite its theoretical compatibility with his underlying conviction if specific factual allegations in the

17 complaint are necessarily inconsistent with the validity of the conviction"].)"]

18       The claim for intentional infliction of emotional distress likewise is barred because the jury

19 expressly found that the officer's conduct was reasonable and, hence, cannot be found to be extreme

20 and outrageous.  Likewise, the claim for false arrest/false imprisonment is barred because the jury

21 determined that the arrest/detention was lawful.  Even a claim of negligence would be barred because

22 the jury found that Messick acted reasonably.

23                                          **ORDER**

24       This action in total is barred because, if Plaintiff was successful, it would imply the invalidity

25 of Plaintiff's criminal convictions.  Thus, the Court **ORDERS**:

26       1.      Defendants' motion for summary judgment (Doc. 95) is **GRANTED**;

27 ///

28 ///

1    2.    The Clerk of the Court is DIRECTED to close this matter.

2

3  IT IS SO ORDERED.

4    Dated:   __**December 10, 2014**__          _____**/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28